*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re C. VERBERG, Minor.

UNPUBLISHED
November 14, 2019

No. 347696
Kent Circuit Court
Family Division
LC No. 16-053602-NA

Before: MURRAY, C.J., and MARKEY and BECKERING, JJ.

PER CURIAM.

Respondent father appeals as of right the order terminating his parental rights to the minor child under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and MCL 712A.19b(3)(g) (financial ability).[1] For the reasons that follow, we affirm.

Respondent argues that the trial court clearly erred by not taking into account his progress, and by prematurely terminating his rights. Regarding the statutory factors, respondent claims that the trial court insufficiently accounted for his complete abstinence from domestic violence in the last year, and imposed an unfair standard to his housing situation.

We conclude that the trial court did not clearly err in finding that the conditions that led to adjudication continued to exist under MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(g). "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). This Court reviews for clear error a trial court's factual determination that statutory grounds exist for termination. *Id.*; MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake had been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). More specifically, this Court gives "deference to the trial court's special opportunity to

---

[1] The biological mother is not a party to this appeal.

judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply support[ed] that [the respondent] had not accomplished any meaningful change in the conditions" that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). The conditions that led to the adjudication were respondent's mental health needs, his domestic violence, his lack of parenting skills, and his lack of resources to care for the minor child. The interlocking conditions as found by the trial court provide support for the trial court's finding of statutory grounds under MCL 712A.19b(3)(c)(*i*).

The trial court did not clearly err in finding that respondent failed to overcome these conditions. The trial court's opinion was detailed and thorough, and facts in evidence supported its decision. Respondent was told that the home he lived in was inappropriate because of his girlfriend's history with Child Protective Services (CPS), and her refusal to allow the Department of Health and Human Services (DHHS) to inspect the area. Nonetheless, respondent insisted on staying at the home. Although CPS determined that the home was appropriate in a separate case, the DHHS could not confirm that the home met its own standards because of the girlfriend's and respondent's refusal to allow inspection. Moreover, reviewing the information that it obtained through CPS, the DHHS determined that the housing was not appropriate by the DHHS's standards. In light of this information, the trial court did not clearly err in finding that respondent's struggle with housing continued to exist, particularly because the failure to mitigate any concerns was largely based on respondent's own failure to cooperate with home inspections.

Regarding his domestic violence, evidence supported the conclusion that respondent failed to understand his role in committing domestic violence. Although respondent managed to avoid domestic violence throughout much of this case, respondent's assault on his mother highlights his slow and intermittent progress in remedying this condition. The same is true of respondent's threat to kill his mother, and subsequent refusal to stop his contact with her. Finally, on cross-examination during the termination trial, respondent claimed that the victims of his domestic violence coerced him into the violence.

Additionally, the majority of respondent's therapy reports were negative, and revolved around respondent denying responsibility and blaming the victims for his acts of domestic violence. Although respondent made some progress, respondent needed to show "that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*). Moreover, respondent only accepted responsibility for his actions after the termination trial proceedings began. This type of progress under duress does not indicate the type of long-term progress that would protect the minor child without trial court supervision. In light of the deference this Court gives to a trial court's assessment of credibility and the facts, the trial court did not clearly err in finding that respondent was still at risk of committing domestic violence, and that he would remain a risk for an unreasonable amount of time. See *In re HRC*, 286 Mich App at 459.

Evidence also supported the trial court's findings regarding respondent's mental health. Regarding his mental health needs, respondent had inconsistent participation in counseling, services, and medication. Respondent admitted to stopping his medication during the trial court

proceedings, and refused to comply with the DHHS's requests for psychiatric referrals and counseling. Respondent repeatedly missed evaluations and counseling sessions intended to assist him. The testimony suggested that respondent's struggles with depression, bipolar disorder, mild attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD) caused him to miss five separate parenting times. There was sufficient evidence that respondent's mental health continued to be a barrier to reunification.

Finally, the trial court did not err in finding that respondent's resources continued to be a barrier. Respondent had been successfully employed in a full-time position. However, respondent quit his job because he did not believe he could simultaneously work and complete his treatment plan. In addition, although respondent claimed to have tried to save "at least $200 for clothes, food, any supplies that [the minor child] needs," respondent was unable to produce this money, and failed to explain how he spent it. Moreover, respondent admitted to not even looking for any jobs during the two weeks before the last day of the termination trial. This evidence shows that respondent still struggled with resource accumulation, resource management, and maintaining employment. Although respondent claimed that he quit his job to focus on seeking treatment, he was required to balance these obligations to overcome his barriers to reunification. Evidence showed that respondent failed in this goal, and so the trial court did not clearly err in finding that this condition continued to exist, and would not be rectified in a reasonable amount of time.

Because these conditions continued to exist, the trial court did not err in finding that MCL 712A.19b(3)(c)(*i*) was met by clear and convincing evidence.

In addition, the trial court did not err in finding that respondent was financially able to provide for the minor child, and failed to do so. See MCL 712A.19b(3)(g). Although respondent was intermittently employed and capable of holding employment, his ability to both remain employed and participate in servicing was inconsistent. Respondent's attempts to save money for his daughter's care were stymied by unexplained spending. Although respondent would have access to food stamps and other benefits if he received custody of the minor child, respondent's inability to manage his resources indicates that he did not appropriately manage these resources. With regard to the prospect of food stamps, respondent continuously bought unhealthy and inappropriate food for the minor child. Because respondent's ability to provide for the minor child is already difficult because of his lack of resources, this choice to indulge in unhealthy food, rather than food that would assist the minor child's growth, is strong evidence that respondent's decision-making was flawed.

As noted, the evidence showed that respondent quit his full-time employment because he could not focus on both this employment and his services. Although respondent's alleged desire to improve was admirable, the practical reality is that respondent would need to balance the significant needs of the minor child with his employment if he were to retain custody. Maintaining employment to provide for the minor child is an essential part of financially providing for the minor child. Because respondent demonstrated an inability to balance the care of the minor child without compromising his ability to provide for her financially, the trial court did not err in finding that MCL 712A.19b(3)(g) was met by clear and convincing evidence.

We also conclude that the trial court did not err in finding that termination of respondent's parental rights was in the child's best interests.

This Court reviews for clear error a trial court's best-interest determination. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). " 'A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made.' " *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016), quoting *In re HRC*, 286 Mich App at 459. Whether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence on the whole record. *In re Moss*, 301 Mich App 76, 83-84, 90; 836 NW2d 182 (2013). A preponderance of the evidence is that which when weighed with the evidence that opposes, it has "more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008).

"In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. Furthermore, the trial court may also consider how long the child has lived in the present home, and the likelihood that the child "could be returned to [the] parent['s] home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

The trial court did not clearly err in finding that termination of respondent's parental rights was in the minor child's best interests. The trial court found that respondent did possess a bond with the minor child. However, the trial court noted that it was not a strong or necessarily positive bond. This finding was supported by the negative statements of the minor child directed at respondent during parenting time, and respondent's own repeated failure to show up for parenting time. The DHHS opined that beginning the process of separating respondent from the minor child was important so that the minor child could "begin the grieving process in order to gain stability and emotional stability." Hence, further delay would have only exacerbated any harm. In addition, respondent's inconsistent parenting time added to the minor child's confusion and instability with regard to respondent's relationship with her. The minor child's need for permanency and stability weighed in favor of termination. See *In re Olive/Metts Minors*, 297 Mich App at 41-42.

In contrast, the DHHS investigated the foster home, and found it safe and appropriate for the minor child. The minor child and foster parents were bonded, and in a stable relationship. Because of the minor child's age, these bonds and stable relationships were particularly important. In light of this evidence, the trial court did not clearly err by finding that the best interests of the minor child supported termination of respondent's parental rights.

Affirmed.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jane M. Beckering